IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William McGreal, Sr. and Denise McGreal, husband and wife | CIVIL DIVISION |
| Plaintiffs | No.  2:18-cv-01601 |
| v. | |
| Westmoreland County, Shara Saveikis, Director of Westmoreland County Children's Bureau, in her individual and official capacity | JURY TRIAL DEMANDED |
| | ELECTRONICALLY FILED |
| Defendants | |

## FIRST AMENDED COMPLAINT

AND NOW come the Plaintiffs, William McGreal, Sr. and Denise McGreal by and through their attorneys, THE LINDSAY LAW FIRM, P.C., Alexander H. Lindsay, Jr., Esquire, and Nathan F. Fulk, Esquire and file this Complaint and aver the following:

## INTRODUCTION

1.     Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging that Westmoreland County and its agents and employees violated their procedural and substantive due process rights under the federal constitution by failing to abide by both federal and state statutes regarding the custody and adoption of Plaintiffs' minor granddaughter, M.M.

## JURISDICTION and VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 and § 1343 and has supplemental jurisdiction to hear state claims of Plaintiff under 28 U.S.C. § 1367(a).

3.     Venue is present in the Western District of Pennsylvania as this is the district where the cause of action arose, where the transactions and occurrences took place out of which the cause of action arose, and is a district in which Defendants regularly conduct activity.

1

<u>PARTIES</u>

4.     Plaintiffs, William McGreal, Sr., and Denise McGreal, are husband and wife and the paternal grandparents of M.M., and are adult individuals residing at 2775 Laurie Drive, Lower Burrell, PA 15068 and at all times material hereto resided in Westmoreland County, Pennsylvania.

5.     Defendant, Westmoreland County is a local government subdivision organized pursuant to the laws of the Commonwealth of Pennsylvania, with its principal office located at Westmoreland County Court House, 2 North Main Street, Greensburg, PA 15601.

6.     Westmoreland County Children's Bureau is a local government agency of Westmoreland County, organized pursuant to the laws of the Commonwealth of Pennsylvania.

7.     Defendant, Shara Seveikis, is the Director of the Westmoreland County Children's Bureau (hereinafter "Agency") and at all times pertinent hereto was the Director of the Agency.

8.     Defendant, Shara Seveikis, is sued in her individual capacity for damages and her official capacity for declaratory and injunctive relief.

<u>FACTUAL BACKGROUND</u>

9.     Plaintiffs are the paternal grandparents of M.M.

10.     M.M. is a minor child born in September of 2013.

11.     M.M. was born while her biological mother, R.G., was incarcerated for drug related offenses.

12.     M.M. was born with methadone in her system as a result of R.G. being in methadone treatment while incarcerated.

13.     As a result of child being born with methadone in her system, the hospital

2

contacted Defendant agency.

14.     Both biological parents have a history of drug use.

15.     Biological father resided with Plaintiffs at the time of M.M.'s birth.

16.     Plaintiffs had invited both father and mother to live in their home during R.G.'s pregnancy in order to help them get treatment.

17.     Following her birth, M.M. initially resided with Plaintiffs.

18.     Defendants permitted M.M. to live with Plaintiffs and Father without any safety plan and Mother also was permitted to reside with Plaintiffs and M.M. upon her release from jail.

19.     Plaintiffs believed that by permitting M.M.'s parents to reside with them that they were assisting parents with care of M.M., aiding parents in maintaining custody of M.M. and providing a safe environment for their grandchild to be raised.

20.     On October 21, 2013, Defendant, noted that William McGreal, Sr., indicated that Plaintiffs were okay with biological Father residing with them, but that Father needed to get his act together and that if Father had to attend rehab, Plaintiffs would care for M.M.

21.     A January 23, 2014 note, by an employee of Defendant, indicates that Father was going to enter rehab that week and that mother and child would be living with Plaintiffs.

22.     A February 14, 2014 note by Defendant remarks that Plaintiffs home is appropriate and that Plaintiffs were informed that they needed to inform Defendant if M.M. was not residing at the home (because M.M. had spent one night with mother and her maternal grandmother).  Maternal grandmother is a heroin addict.

23.     An April 3, 2014 note, by Defendant, sets forth that Plaintiffs have stated that they will remove parents from the home if necessary (father was at Cove Forge rehab at the time) and that William McGreal, Sr., was helping mother with rides to appointments.

3

Defendant indicated that M.M. was safe and her needs were being met when Plaintiffs were home.

24.    Unbeknownst to Plaintiffs, mother was still using heroin.

25.    When M.M. was approximately eight months old, on May 23, 2014, M.M. was determined to be dependent and removed from Plaintiffs' home.

26.    The reason for removal was that parents tested positive for drugs, did not fully participate in services and the Agency had difficulty contacting parents—none of which Plaintiffs were aware of due to Agency not informing them because of alleged privacy issues.

27.    Plaintiffs were not aware that Agency was planning on removing M.M. from their home.

28.    Agency did not provide Plaintiffs notice of an adjudicatory hearing concerning dependency or that Agency intended to remove M.M. from their home.

29.    Agency failed to follow statutory rules and procedural rules concerning "family finding"[1] and notice to family members.

30.    42 U.S.C. § 671(a)(29) mandates that a state agency engage in diligent efforts to identify and provide notice to family members when a child is removed from her parents' care to allow family members the opportunity to have the child placed with the family member.

31.    In addition, 42 U.S.C. § 671(a)(20) sets forth that a state agency "shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child[.]"

32.    The federal Fostering Connections statute posits that within 30 days of removal

_____

1  Pennsylvania law defines family finding as "Ongoing diligent efforts between a county agency, or its contracted providers, and relatives and kin to: (1) Search for and identify adult relatives and kin and engage them in children and youth social service planning and delivery. (2) Gain commitment from relatives and kin to support a child or parent receiving children and youth social services." 62 P.S. § 1302.

of a child from her parents' custody, state agencies are required to exercise due diligence to identify and provide notice to all adult grandparents and other adult relatives of the child.  The notice must specify the child was removed from custody of the parents, explain the options the relative has to participate in the care and/or placement of child, and any options that may be lost by failing to respond to the notice, describe the requirements to become foster parents, outline available services and supports and describe the states' kinship guardianship assistance program, if one exists.

33.     Agency failed to abide by this federal law.

34.     Similarly, Pennsylvania statutory law required diligent family finding efforts.  62 P.S. § 1301 *et seq.*

35.     62 P.S. § 1302 provided, in pertinent part, "the county agency shall exercise due diligence to identify and notify all grandparents and other adult relatives to the fifth degree of cosanguinity or affinity to the parent or stepparent of a dependent child within 30 days of the child's removal from the child's home when temporary legal and physical custody has been transferred to the county agency.  The notice must explain all of the following: (1) Any options under Federal and State law available to the relative to participate in the care and placement of the child, including any options that would be lost by failing to respond to the notice.  (2) The requirements to become a foster parent, permanent legal custodian or adoptive parent. (3) The additional supports that are available for children removed from the child's home."

36.     Agency failed to abide by this statute.

37.     Section 1302.1 also provides that "Family finding shall be conducted for a child when the child is accepted for services and at least annually thereafter, until the child's involvement with the county agency is terminated or the family finding is discontinued in accordance with section 1302.2."

38.     Section 1303 required Defendant Agency to "give first consideration to placement with relatives."

39.     Agency did not follow these statutory provisions.

40.     Pennsylvania procedural rules also mandate continues, diligent efforts to find and engage family. Pa.R.J.P. 1120.

41.     Agency neglected to follow Rule 1120.

42.     Pennsylvania state law, 11 P.S. § 2633, also provides that, where a child is in foster care, first consideration for placement is given to relatives.

43.     The same statute also posits that the child have "Permission to visit and have contact with family members, including siblings, as frequently as possible[.]"

44.     As a result of the Agency's policies, practices and customs, it neglected to provide proper notice to Plaintiffs, required by "family finding" statutes, and did not inform Plaintiffs of their rights to demand a kinship application, file a custody action or to intervene in the dependency action.

45.     These actions were intentionally taken because Agency did not wish to place M.M. with Plaintiffs because it believed Plaintiff Denise McGreal was rude to a caseworker and was not sufficiently cooperative with Defendant Agency.

46.     Plaintiffs were able and willing to take custody of the child; however, M.M. remained in a non-kinship foster home.

47.     Plaintiffs were not aware that by not immediately seeking custody or apparently specifically asking/demanding a 'kinship application" that they would not be able to adopt M.M. in the future.

48.     Notably, at the May 23, 2014 dependency adjudicatory hearing, a caseworker for Agency falsely testified that Plaintiffs provided money to the biological parents, which was

used for drugs, and erroneously and falsely testified that Plaintiffs enabled the biological parents.

49.     Plaintiff, Denise McGreal, was not permitted to testify at the hearing to refute the false and misleading testimony.

50.     As a result of the adjudication of dependency, Agency, placed M.M. in foster care— the foster mother being a former crystal meth user and the foster father being a full-time Pennsylvania State Trooper.

51.     A June 8, 2014 note provides that Plaintiffs expressed the desire for M.M. to remain in the home with them and further noted that Plaintiffs and mother were cooperative.

52.     This was after additional drug relapses and criminal charges against Mother and Father based on continued drug usage.

53.     On June 2, 2015, Plaintiff, William McGreal, Sr., was told by Agency, via Colleen Flynn, that Agency was not seeking kinship because child had been in the care of foster parents for over a year.

54.     Throughout Agency's interaction with Plaintiffs it failed to inform Plaintiffs that they could request a kinship application, file a custody action, and that failure to do so would result in them not being given the first opportunity to adopt M.M.

55.     Plaintiffs believed that by allowing biological parents to reside with them and M.M. and providing transportation to visits and various meetings with service providers for parents that they were assisting both parents and M.M. and were not aware that Agency considered parents' residence with Plaintiffs to preclude future placement with Plaintiffs.

56.     Mother, R.G., was initially able to make progress and moved into another property owned by Plaintiffs and M.M. was placed in her care full time for a trial home visit.

57.     However, the trial home visit lasted approximately one week and M.M. was

returned to foster care.

58.    On October 20, 2015, Plaintiff, William McGreal, Sr., requested an application for kinship.

59.    Defendant Agency filed petitions to terminate the parental rights of M.M.'s birth parents on December 1, 2015.

60.    Despite already having asked for an application for kinship, for the first-time, Plaintiffs were told by caseworker Rachel Sementuh that Plaintiffs could apply for kinship but would need to request to do so.

61.    On December 17, 2015, the Westmoreland County Court of Common Pleas directed that Defendant engage in "family finding."

62.    Agency failed to appropriately and adequately engage in "family finding," instead just asking parents for names of family members.

63.    On December 21, 2015, Plaintiffs filed a petition to confirm standing and application for leave of court to file custody action, which the trial court granted.

64.    Plaintiffs also filed a complaint in custody for M.M. against M.M.'s birth father (their son) and birth mother, R.G., as well as against the Westmoreland County Children's Bureau.

65.    Thereafter, on March 21, 2016, Plaintiffs filed a motion to intervene in M.M.'s dependency case under Pa.R.J.P. 1133 and Pa.R.C.P. 2328.

66.    M.M.'s birth parents voluntarily relinquished their parental rights on May 9, 2016.

67.    Plaintiffs were permitted supervised visitation with M.M. and Agency, one time per month via a May 19, 2016 court order.

68.    Agency filed a motion *in limine* in the family court proceedings to preclude introduction of evidence establishing their violations of federal statutory law, 42 U.S.C. §

671(29), and Pennsylvania statutory law, 62 P..S. § 1303(a.1).

69.     The aforementioned violations violated Plaintiffs' procedural due process rights.

70.     The aforementioned motion *in limine* was granted in part as to precluding introduction of the general policy practices of Agency (relative to its kinship practices), which practices violated both federal and state law.

71.     Defendant also violated state statutory law and rules of procedure.

72.     Defendant had in place a policy, practice, and custom of failing to abide by federal and statute statutory requirements concerning kinship practices, not limited to but including notice to family and providing notice and information concerning kinship application procedures.

73.     On July 22, 2016, August 1, 2016, October 13, 2016, October 21, 2016, and November 10, 2016, custody proceedings transpired in Westmoreland County Court of Common Pleas.

74.     During the litigation, Attorney Charles Wade, who previously represented the foster parents herein in the adoption of another child, represented the Agency.

75.     On December 1, 2016, the Court of Common Pleas of Westmoreland County awarded sole legal and physical custody of M.M. to the Westmoreland County Children's Bureau.

76.     Subsequently, on December 5, 2016, Plaintiff William McGreal, Sr., and Plaintiffs attorney, Rochelle Bosack, Esq., appeared for a permanency placement review hearing before Master Hope Aston, having received notice as an intervening party.

77.      Although Plaintiff William McGreal, Sr., was entitled to be present as an intervening party, Master Aston attempted to preclude Mr. McGreal, Sr., and counsel from attending.

78.     Upon locating the court order allowing Plaintiffs to intervene, Master Aston, aware that Agency did not wish for Mr. McGreal, Sr., and his counsel to be present, left the room and visited with Judge Harry Smail.

79.     Master Aston then returned and instructed Agency, before the Permanency Placement Review Hearing began, to prepare a proposed order to remove Plaintiffs as intervenors and present it to the court for signature and that Judge Smail would sign the order.

80.     Master Aston provided that the hearing would move forward without Plaintiffs and counsel present.

81.     Agency did present and prepare such an order, which Plaintiffs were not afforded an opportunity to contest, and the court signed the order.   These actions of Defendant Agency violated Pa.R.J.P. 1136, which precludes *ex parte* communications with the court.

82.     In addition, Agency included in the above referenced proposed order a sentence that precluded Plaintiffs from further visitation with M.M.

83.     Accordingly, on or about December 5, 2016, the Court of Common Pleas of Westmoreland County terminated Plaintiffs intervenor status and discontinued their monthly visits with M.M.

84.     All of the above-referenced actions by Defendant deprived Plaintiffs of procedural and substantive due process.

85.     Plaintiffs appealed both the December 1, 2016 and December 15, 2016 Orders.

86.     The Pennsylvania Superior Court affirmed the Court of Common Pleas orders on September 11, 2017.

87.

10

## Count I

### Violation of 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process Right to Familial Association, Freedom of Intimate Association, Family Privacy

88.     The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

89.     Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress

90.     The Fourteenth Amendment provides in relevant part that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law."

91.     Plaintiffs, as grandparents of M.M. and who had active participation in the life of M.M. prior to December 5, 2016, have a fundamental right to freely associate with and participate in the upbringing of their grandchild.

92.     The interest of grandparents in maintaining relationships with their grandchildren is a protected liberty interest within the meaning of the Due Process Clause.

93.     Plaintiffs, as grandparents of M.M., have a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

94.     "The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process."  *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125 (3d Cir. 1997).

95.     Defendants are state actors subject to the Fourteenth Amendment.

96.     Defendants, through their agents and employees, at all times material hereto acted under color of state law, acted willfully, knowingly, and purposefully, with the intent to deprive Plaintiffs of their liberty interests and rights, privileges and immunities secured by the Constitution and the law of the United States, in violation of 42 U.S.C. § 1983, particularly:

i.      Defendants failed to notify Plaintiffs or adequately notify Plaintiffs and intentionally concealed from Plaintiffs their options under federal and state law which were available to them to participate in the care and placement of M.M., including failure to notify them of any options that would be lost by failing to respond to the notice;

ii.     Defendants failed to notify or adequately notify or discuss/inform Plaintiffs of the requirements to become a foster parent, or permanent legal custodian or adoptive parent as required by federal and state law.

iii.    Defendants followed a policy, custom, and practice of failing to adequately conduct family finding, provide kinship applications, and notify family members of options under Federal and State law available to them to participate in the care and placement of a related child, including any options that would be lost by failing to respond to the notice;

iv.     Defendants followed a policy, custom and practice of neglecting to inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent.

97.     Defendant, Shara Saveikis, failed to adequately train or supervise Agency employees as it relates to conducting appropriate family finding, providing kinship applications, and providing notice to family members of options under federal and state law

available to the family member to participate in the care and placement of a related child that had been removed from a parents home, including any options that would be lost by failing to respond to such notice and informing family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent.

98.    The aforementioned conduct as more fully described in the Factual Background paragraphs deprived the Plaintiffs of rights, privileges or immunities secured by the Constitution of the United States including a deprivation of liberty and the loss of their ability to freely associate with and participate in the upbringing of their granddaughter, M.M. and the right to freedom of intimate association.

99.    Defendants acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional rights.

100.    Defendants acts were with malice and reckless disregard for Plaintiffs' federally protected constitutional and civil rights.

101.    Various citizens, including Plaintiffs, have been subjected to the aforementioned illegal and unconstitutional policies, customs and practices of Defendants.

102.    Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiffs for damages.

103.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to attorneys' fees and costs incurred in bringing this action.

104.    As a direct and proximate result of the conduct of the Defendants as aforesaid, Plaintiff has suffered and will continue to suffer irreparable injury, including but not limited to humiliation and significant psychological trauma and monetary damages.

WHEREFORE, Plaintiffs respectfully requests judgment against the Defendants for monetary and compensatory damages plus court costs, interest, attorneys' fees, and other damages as the Court deems appropriate, including but not limited to:

i.     Declaring that Defendants' policy, custom and practice of failing to follow 42 U.S.C. § 671(29), 62 P.S. § 1303(a.1), 62 PS. § 1303(b), 62 PS. § 1302.2, 62 P.S. § 1302.1 and Pa.R.C.P. 1149 was and is in violation of the Fourteenth Amendment of the United States.

ii.    Declaring that Defendants' policy, custom and practice of not properly engaging in family finding, providing kinship applications, or providing appropriate notice to family members of their options under federal and state law which are available to them to participate in the care and placement of a child, including failure to notify them of any options that would be lost by failing to respond to the notice; and failing to inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent as required by federal and state law violated the Fourteenth Amendment of the United States.

iii.   Granting permanent injunctive relief requiring Defendant to present a plan to the Court that provides for: promulgation of a meaningful process of written notice for family finding, providing of kinship applications, and a plan for providing appropriate notice to family members of their options under federal and state law which are available to them to participate in the care and placement of a child, including notifying them of any options that would be lost by failing to respond to the notice; and inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent as required by federal and state law.

A JURY TRIAL IS DEMANDED.

**Count 2**

**Violation of 42 U.S.C. § 1983: Fourteenth Amendment Procedural Due Process**

105.   The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

106.   Procedural due process requires that state actors, at minimum, follow written statutes and rules.

107.   Plaintiffs' procedural due process rights were violated by Defendants failure to follow the laws of Pennsylvania and federal law: to wit, Defendants did not abide by 42 U.S.C. § 671(29), 62 P.S. § 1303(a.1), 62 P.S. § 1303(b), 62 P.S. § 1302.2, 62 P.S. § 1302.1 and Pa.R.C.P. 1149.

108.   Defendants had a custom, policy and practice of neglecting to adequately adhere to 42 U.S.C. § 671(29), 62 P.S. § 1303(a.1), 62 P.S. § 1303(b), 62 P.S. § 1302.2 , 62 P.S. § 1302.1, and Pa.R.C.P. 1149: to wit, Defendants routinely did not engage in appropriate family finding, failed to provide kinship applications unless a direct and highly specific inquiry was made for such, and failed to provide appropriate notice to family members of their options under federal and state law which are available to them to participate in the care and placement of a child, including failure to notify them of any options that would be lost by failing to respond to the notice; and failing to inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent.

109.   Defendant, Shara Saveikis, failed to adequately train or supervise Agency employees as it relates to conducting appropriate family finding, providing kinship applications, and providing notice to family members of options under federal and state law available to the family member to participate in the care and placement of a related child that had been removed from a parents home, including any options that would be lost by failing to

respond to such notice and informing family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent.

110. Defendants, through their agents and employees, at all times material hereto acted under color of state law, acted willfully, knowingly, and purposefully, with the intent to deprive Plaintiffs of their liberty interests and rights, privileges and immunities secured by the Constitution and the law of the United States, in violation of 42 U.S.C. § 1983.

111. The aforementioned conduct deprived Plaintiffs of rights, privileges or immunities secured by the Constitution of the United States including a deprivation of liberty and the loss of their ability to freely associate with and participate in the upbringing of their granddaughter, M.M. and the right to freedom of intimate association.

112. Defendants acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional rights.

113. Defendants acts were with malice and reckless disregard for Plaintiffs' federally protected constitutional and civil rights.

114. Various citizens, including Plaintiffs, have been subjected to the aforementioned illegal and unconstitutional policies, customs and practices of Defendants.

115. Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiffs for damages.

116. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to attorneys' fees and costs incurred in bringing this action.

117. As a direct and proximate result of the conduct of the Defendants as aforesaid, Plaintiff has suffered and will continue to suffer irreparable injury, including but not limited to humiliation and significant psychological trauma and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants for monetary and compensatory damages plus court costs, interest, attorneys' fees, and other damages as the Court deems appropriate, including but not limited to:

i.    Declaring that Defendants' policy, custom and practice of failing to follow 42 U.S.C. § 671(29), 62 P.S. § 1303(a.1), 62 P.S. § 1303(b), 62 P.S. § 1302.2, 62 P.S. § 1302.1, and Pa.R.C.P. 1149 violated the Fourteenth Amendment of the United States.

ii.   Declaring that Defendants' policy, custom and practice of not properly engaging in family finding, providing kinship applications, or providing appropriate notice to family members of their options under federal and state law which are available to them to participate in the care and placement of a child, including failure to notify them of any options that would be lost by failing to respond to the notice; and failing to inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent as required by federal and state law violated the Fourteenth Amendment of the United States.

iii.  Granting permanent injunctive relief requiring Defendant to present a plan to the Court that provides for: promulgation of a meaningful process of written notice for family finding, providing of kinship applications, and a plan for providing appropriate notice to family members of their options under federal and state law which are available to them to participate in the care and placement of a child, including notifying them of any options that would be lost by failing to

respond to the notice; and inform family members of the requirements to become a foster parent, or permanent legal custodian or adoptive parent as required by federal and state law.

A JURY TRIAL IS DEMANDED.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.,

*s/Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esq.
Pa. Supreme Court Id. No. 15088

*s/ Nathan F. Fulk*
Nathan F. Fulk, Esq.
Pa. Supreme Court Id. No. 326385

110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone:  (724) 282-6600